IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LINDA TRUJEQUE,**

       Plaintiff,

vs.                                                          Civ. No. 03-907 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision filed December 22, 2003. Docket No. 8. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well taken in part.

**I. PROCEDURAL RECORD**

Plaintiff, Linda Trujeque, applied for Supplemental Security Income Benefits on June 12, 2000. Plaintiff alleged she became disabled on October 1, 1998 due to problems with her hands, knees, and shoulders. Tr. 91 and 105. The application was denied at the initial and reconsideration level. The ALJ conducted a hearing on December 13, 2001. At the hearing, Plaintiff was represented by counsel. On February 22, 2002, the ALJ issued his decision and found that Plaintiff's musculoskeletal and visual impairments were "severe" but that Plaintiff was not disabled. Thereafter,

the Plaintiff filed a request for review.  On June 9, 2003 the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr. 4.  The Plaintiff subsequently filed her Complaint for court review of the ALJ's decision on August 4, 2003.

Plaintiff was born on September 1, 1949.  Tr. 22.  She has an eleventh grade education and last worked in 1998 as a material preparer at a manufacturing plant.  This position involved painting, lifting and moving parts. Tr. 71. 118-19.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards.  See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992); Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1994).  To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance.  Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Sisco v. United States Dep't. of Health & Human Servs., 10 F.3d 739, 741 (1993).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a clamant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  See 42 U.S.C. §423(d)(1)(A); see also Thompson, 987 F.2d at 1486.  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing

disability applications. 20 C.F.R. § 404.1520(a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. See Thompson, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. Id.

### III.  MEDICAL HISTORY

The issue in this matter concerns Plaintiff's musculoskeletal problems which began in April of 1998. She was seen by Dr. R.L. Nail for a sudden onset of left shoulder pain while trying to pull an object called a "crown," out from other objects during work. Tr. 230. She was prescribed Vicodin, a narcotic painkiller. Tr. 230. She was released to "full activities on May 4, 1998." Later in May of 1998, Plaintiff began to experience pain and swelling in her right shoulder due to overuse of right upper extremity. Tr. 225. She was diagnosed with a right shoulder and trapezius strain and prescribed Relafen. She was limited to lifting 10 pounds. Tr. 225. Plaintiff was returned to "regular activities on June 11, 1998" but later in June 1998, she started to have pain in both of her wrists. Her treating physician, Dr. Eugene P. Toner noted the following on June 26, 1998:

> She states a far as her right and left shoulders go, these are feeling well. She is more concerned abut her bilateral wrists. She states she has been in so much pain she cannot use her hands. She has had right small finger and ring finger numbness and tinging. She has had no numbness or tingling in the left hand. According to my noted (sic) dated 06/04/98,

>she had complained of some numbness or tingling in her right small finger and ring finger at that time. She stated she has had periodic numbness and tingling in that finger for the past few years.
>
>The patient does not recall any specific incident or activity which caused the bilateral wrist swelling. She states while on vacation that she was fishing and camping. She states when she returned home from her fishing and camping trip, she began taking the Relafen, which had been previously prescribed by myself for her shoulder pain. She states her wrists improved dramatically following taking the Relafen.

Tr. 219.

Plaintiff also saw Dr. Carolyn Castillo, a primary care physician, in October 1998 for left shoulder pain. Dr. Castillo found evidence of an impingement syndrome involving the left shoulder and prescribed a potent pain medication and physical therapy. However, Dr. Castillo did not restrict Plaintiff's ability to perform gain activity. Tr. 203. Dr. James Poliner, a pulmonary specialist, saw Plaintiff in March 1999 and although he diagnosed "arthritis-arthralgias-associated with a mildly positive rheumatoid'" he did not place Plaintiff on any work related restrictions. Tr. 160.

In December of 1998, Plaintiff was evaluated by Dr. Susan Comer, a rheumatologist. She continued to see Dr. Comer until October of 2001. Tr. 175-178, 267-271. Though Plaintiff had a positive rheumatoid factor, Dr. Comer found that she "does not have physical examination compatible with rheumatoid arthritis and has not had any erosive changes on x-ray." Tr. 270. On August 7, 2001, Dr. Castillo submitted a Statement of Ability To Do Work-Related Physical Activities indicating Plaintiff should only lift less than 10 pounds occasionally or frequently but those limitations were based on Plaintiff's "musculoskeletal complaints." Tr. 261.

## IV. DISCUSSION

Plaintiff alleges that the ALJ's findings regarding Plaintiff's residual functional capacity ("RFC"), Plaintiff's credibility and at step five are not supported by the substantial evidence.

Residual Functional Capacity.

The determination of a claimant's RFC is the extent to which the claimant's impairments and related symptoms affect her capacity to do work-related activities. Social Security Ruling ("SSR") 96-5p (1996 WL 374183); SSR 96-8p (1995 WL 374184). An evaluation of an RFC is a decision of what a Plaintiff can do despite her limitations. 20 C.F.R. §§404.1545(a), 416.945(a). In this matter, the ALJ determined that Plaintiff had an RFC for a significant range of light work. Tr. 25. Light work requires standing or walking for six hours out of an eight hour workday, lifting no more than twenty pounds at a time, and frequent carrying of objects weighing up to ten pounds at a time. 20 C.F.R. §§404.1567(b), 416.967(b).

Plaintiff argues that her shoulder and wrist pain limits her RFC. However, as noted above none of Plaintiff's treating physicians found that she had disabling pain or disabling abnormalities. Additional medical evidence showed that in May of 1998, Dr. Toner found that Plaintiff had a complete range of motion in her right shoulder with some tenderness. Tr. 225. Dr. Toner placed Plaintiff on a 10 pound weight restriction. However, in June of 1998, Dr. Toner increased Plaintiff's weight restriction to thirty pounds. Tr. 222. In July of 1998, Dr. Toner found that Plaintiff's right arm discomfort had resolved leaving Plaintiff with minimal residual pain. Tr. 218.

In November of 1998, Plaintiff was seen by Jeffrie Felter, M.D. On physical examination, Dr. Felter found that Plaintiff had a complete range of motion in her shoulders and wrists. He also noted that x-rays of the shoulder showed "no significant abnormity (sic)." Tr. 187.

Dr. Comer, the rheumatologist, also found minimal evidence of a disabling impairment. In December of 1998, Dr. Comer found that Plaintiff had full or close to full grip strength. Tr. 177. In February of 1999, Dr. Comer examined Plaintiff and found no significant trigger point tenderness,

5

though Plaintiff had some mild tenderness in her right wrist and shoulder. Tr. 161. There was no swelling or increased warmth in her joints. Id. In October 2000, an x-ray showed that Plaintiff's right hand had some degenerative changes in her fourth finger, but the study was otherwise unremarkable. Tr. 242. In October of 2001, Dr. Comer found that Plaintiff had "[m]inor osteoarthritis" of the hands, shoulder, neck and lumbrosacral spine. Tr. 270. She noted that recent x-rays of Plaintiff's cervical spine showed minimal or early abnormalities. Tr. 269. An x-ray of the right shoulder also taken on August 28, 2001 showed "minimal degenerative change of the AC joint but otherwise was normal." Id.

Plaintiff asserts that the ALJ erred in not relying on the opinion of Dr. Jeffery Sollins. Dr. Sollins found that Plaintiff should lift no more than 10 pounds occasionally and that he was not sure she "should be doing activities of repetitive motion involving her hands and any activities involving stooping or bending..." Tr. 237. Dr. Sollins is a consultative examiner. An ALJ must generally give greater weight to the opinions of a treating physician than the opinions of a consulting physician. Washington v. Shalala, 37 F.3d 1437, 1440-41 (10th Cir. 1994). In this matter the ALJ properly noted the inconsistency between Dr. Sollins' objective findings and the limitations he imposed on the Plaintiff. Tr. 21-22. The ALJ specifically noted that:

> Dr. Sollins' physical examination was normal with the exception of some right wrist swelling. Moreover, Dr. Sollins reported that she had 'reasonably good' motor, tone, and strength in her extremities. Her ability to stand and walk was 'adequate.' But she did have 'great' difficulty with bending, stopping, and squatting. She had normal coordination with no sign of any tremor. Her ability to grasp was 'good' on both sides. She could make a fist, and she had legible handwriting.

Tr. 21.

Dr. Sollins opinion is inconsistent with his objective examination and not based on accepted laboratory testing or diagnostic techniques. Thus, the ALJ properly discounted his opinions. Watkins v. Barnhart, 350 F.3d 1297 (10th Cir. 1003); Castellano v. Secretary of HHS, 26 F.3d 1027, 1029

(10th Cir. 1994).

Moreover, the ALJ properly discounted the opinion of Dr. Castillo that Plaintiff could only lift 10 pounds occasionally. Though a treating physician, the form evaluation sheet noting this limitation indicates Dr. Castillo based the opinion on "musculoskeletal complaints." Tr. 261. This opinion is not supported by the clinical data and thus was properly discounted. Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988).

The Court agrees with the Plaintiff that the ALJ erred in relying on the "examination" of Dr. Romanick in finding that Plaintiff's was not limited to lifting 10 pounds occasionally. There is no record of any examination of by Dr. Romanick. The record referring to Dr. Romanick merely shows that he is with the Disability Determination Unit and is the referring physician for an x-ray of Plaintiff's right hand. Tr. 242. As discussed below, this matter will be remanded and this error should be considered on remand.

<u>Pain and credibility finding</u>.

Plaintiff asserts that the ALJ erred in analyzing Plaintiff's complaints of pain and that the ALJ's findings concerning Plaintiff's credibility are not supported by the substantial evidence. An ALJ must give specific reasons why he rejects Plaintiff's subjective complaints of pain. Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995).

In making his credibility finding the ALJ wrote, in part, that "the claimant did not explain her failure to follow prescribed medical advice. Consequently, this evidence refutes the claimant's allegation of chronic, disabling left shoulder pain and reflects adversely on her overall credibility." Tr. 21. In reviewing whether a Plaintiff's "failure to undertake treatment will preclude the recovery of disability benefits," the ALJ must consider four elements: "(1) whether the treatment at issue

7

would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." Weakley v. Heckler, 795 F.2d 64, 66 (10th Cir. 1986).  The ALJ may make an adverse credibility finding to deny benefits on this ground only if he makes a finding that Plaintiff failed to follow prescribed treatment which would restore her capacity to engage in substantial gainful activity.  Goodwin v. Barnhart, 195 F. Supp. 2d 1293, 1295-96 (D. Kan. 2002).  That is, the ALJ must make a specific finding that Plaintiff's failure to get physical therapy as ordered by Dr. Toner or her failure to stop smoking and drinking alcohol as recommended by Drs. Castillo, Poliner and Comer would alleviate her musculoskeletal pain and restore her ability to work. Tr. 147, 154, 160, 203, 225.  The ALJ did not make such a finding and thus did not apply the correct legal standard.

Due to this error, this matter must be remanded for further proceedings.  In addition the Court advises the Secretary that on remand, a proper pain analysis must be performed and that all of Plaintiff's limitations supported by the substantial evidence be considered at step five.  The Court is not mandating or indicating a particular result.  The remand, instead simply assures that the correct legal standards are involved in reaching a decision based on the evidence in the case. Kepler, 68 F.3d at 392 (10th Cir. 1995).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is granted for proceedings consistent with this memorandum opinion and order.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**